UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:16-cr-00081-TLS-SLC |
| | ) | |
| ANDREW L. FITCH | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a motion to suppress all evidence (DE 32) filed by Defendant Andrew Fitch. Fitch seeks to suppress evidence discovered by police officers during an encounter on August 20, 2016, contending that all of the evidence was obtained as a result of violations of his Fourth Amendment rights. After considering the evidence and argument submitted by the parties in this matter, I RECOMMEND that Fitch's motion to suppress all evidence be DENIED.

## I. BACKGROUND

On November 18, 2016, Fitch was indicted by way of a single-count indictment and charged with possessing with the intent to distribute methamphetamine, a Schedule II Controlled Substance, in violation 21 U.S.C. § 841(a)(1). (DE 1). On December 20, 2016, Fitch pleaded not guilty. (DE 15). On November 13, 2017, Fitch filed the instant motion. (DE 32). This matter was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). (DE 36). An evidentiary hearing on this matter was held on January 9, 2018. (DE 38). On March 7, 2018, Fitch filed a post-hearing brief in support of his motion to suppress. (DE 41). The Government filed its response on April 9, 2018. (DE 42). On April 23, 2018, Fitch filed his reply brief. (DE 43).

## II. FINDINGS OF FACT

At the evidentiary hearing, the Government offered the testimony of Angola City Police

Department ("ACPD") Officer Matthew Kling ("Officer Kling") and ACPD Officer Brandon Booth ("Officer Booth").[1] (DE 40, Transcript of Motion to Suppress Hearing ("Tr.") 2). Fitch did not offer the testimony of any witnesses and did not meaningfully contest the officers' testimony in any way, and I FIND their testimony to be credible.

On the morning of August 20, 2016, Officer Kling was working patrol shift, driving along I-69 freeway, traveling southbound. (Tr. 9-11). That night, Officer Kling was wearing a police uniform, and driving a Ram Truck,[2] which was fully marked and identified as an ACPD police vehicle. (Tr. 9-10).

At around 4:43 a.m., Officer Kling observed a motorcycle coming up about a quarter of a mile behind him, and catching up with him quickly. (Tr. 10-11, 39). The speed limit on that stretch of freeway was 70 miles per hour. (Tr. 11). Officer Kling's radar indicated that the motorcycle was approaching him at 87 miles per hour.[3] (Tr. 11-12). At that time, Officer Kling decided to perform a traffic stop on the motorcycle for speeding. (Tr. 12-13).

Officer Kling slowed his vehicle down and proceeded to the exit ramp to U.S. route 20. (Tr. 14-15). The motorcycle did the same. (Tr. 14-15). After the motorcycle passed Officer Kling, he activated the emergency lights on his truck and began following the motorcycle. (Tr.

---

[1] Officer Kling has been a patrolman with the ACPD for approximately 16 years. (Tr. 4). Officer Kling has specialized training as a drug recognition examiner and as a crash reconstructionist. (Tr. 4-5). Officer Kling graduated from the Indiana Law Enforcement Academy in 2002 at the top of his class. (Tr. 5). In 2010, Officer Kling completed a national certified course, which trained him to conduct tests to determine what sort of drug is causing somebody to be impaired. (Tr. 5-6). In 2012, Officer Kling became an instructor for this course, and in 2017, he had taught this course three times. (Tr. 6). In his time as a patrolman for the ACPD, Officer Kling has conducted traffic stops involving marijuana, methamphetamine, and opioids. (Tr. 8).
Officer Booth has been a patrolman with the ACPD for approximately 10 years. (Tr. 56). Officer Booth completed 16 weeks of training with the Indiana Law Enforcement Academy. (Tr. 57).

[2] ACPD policy dictated that an officer driving this type of truck was not supposed to be involved in a pursuit unless there were exigent circumstances. (Tr. 25). Officer Kling testified that he pursued Fitch instinctively, even though it violated ACPD policy. (Tr. 26, 45-46). The reasons for this policy are that trucks and their tires are not "pursuit rated"; or not made to reach the high speeds of a pursuit. (Tr. 26-27, 40).

[3] Officer Kling's stalker radar was recently certified as accurate. (Tr. 12-14; Ex. 2).

2

15-16; Ex. 1 at 2:18-28).  The motorcycle turned right off the ramp onto U.S. route 20, and Officer Kling believed that the motorcycle was pulling into a local store where people often stop. (Tr. 16-17).

However, after turning, the motorcycle accelerated rapidly away from Officer Kling in an attempt to evade him.  (Tr. 17; Ex. 1 at 2:55).  Officer Kling pursued the motorcycle, reaching speeds of 106 miles per hour.  (Tr. 17).  Eventually, the motorcycle attempted to make a turn onto a dirt road, but because it was traveling too fast the driver, later identified as Fitch, lost control of the motorcycle and laid it down beneath him.  (Tr. 18; Ex. 1 at 5:15).

Officer Kling approached Fitch with his gun drawn, commanded Fitch to lay down, which Fitch did, and kept his gun trained on Fitch until Officer Booth arrived.  (Tr. 20).  Once Officer Booth arrived, Officer Kling approached Fitch and handcuffed him.  (Tr. 20-21, 57).  At some point, Officer Brian Snyder ("Officer Snyder") also arrived on the scene.  (Tr. 62).  Officer Kling performed a pat down of Fitch's outer clothing, which did not produce any contraband or weapons.  (Tr. 21, 57).  Officer Booth then placed Fitch in his police vehicle.  (Tr. 22, 57).

Fitch's driver license did not have a motorcycle endorsement, which is required under Indiana law to operate a motorcycle.  (Tr. 23).  Officer Kling checked the registration of the motorcycle and found that it was registered to Luther Fitch.  (Tr. 22).  After running Fitch's information, Officer Kling learned that Fitch had an active arrest warrant in DeKalb County, Indiana, for possession of methamphetamine.  (Tr. 23; Ex. 1 at 10:27-32).  Fitch also had a conviction for possession of methamphetamine in 2010.  (Tr. 25).  Additionally, Officer Kling was familiar with reports that Fitch was involved in trafficking methamphetamine and that he had been the driver in another motorcycle pursuit a few days earlier but was not apprehended. (Tr. 24).

3

Officer Kling called a tow truck to impound Fitch's motorcycle. (Tr. 28-29, 30, 41). When impounding a vehicle, Angola City Police Standard Operating Guidelines provide:

> An inventory of the vehicle will take place. The inventory is solely for the purpose of identifying and document any items of value that may be within the vehicle, . . . . Officers are authorized and should open any container located within the vehicle that may be capable of containing anything of value. Any items of value that are located within the vehicle should be noted in the proper location on the approved impound form.

(Ex. 3). Officer Kling testified that he searched the motorcycle, including a bag or compartment near the gas tank of the motorcycle pursuant to ACPD policy. (Tr. 30-31, 41; *see* Ex. A). Officer Kling did so before the impound truck arrived, and he testified that such pre-impound searches are standard ACPD practice. (Tr. 31, 44, 53).

Inside the compartment Officer Kling found a large quantity of pills that were later identified as Sudafed, and small baggies. (Tr. 31). Officer Kling testified that, based on his experience, Sudafed is commonly used to manufacture methamphetamine and small baggies are commonly used to distribute small amounts of drugs. (Tr. 31). The compartment also contained electronic scales, which Officer Kling testified resembles the types of scales commonly used to measure drugs for sale. (Tr. 32).

A section of the compartment was already opened and revealed a jar with a green plant material. (Tr. 32). Based on his training, Officer Kling believed this substance to be marijuana. (Tr. 32). Officer Kling also found a glass pipe in the compartment and testified that it resembles pipes commonly used to smoke methamphetamine and a baggie that contained about 83 grams of a crystal-like material. (Tr. 32-33). Based on his training and experience, Officer Kling believed that this substance was crystal methamphetamine. (Tr. 32-33). Officer Kling later took this substance into custody and performed a field test on it, which came back positive for

4

methamphetamine. (Tr. 33). Officer Kling testified that the amount of crystal methamphetamine found in Fitch's bag was consistent with distribution. (Tr. 33). Officer Kling filled out an Abandoned/Impound Vehicle Report ("Impound Report"), which listed "DRUGS" as the only item found in the vehicle. (Ex. A).

At the jail, a search of Fitch's person found a freshly burnt, hand-rolled cigarette that had an odor of burnt marijuana. (Tr. 33-34). Fitch was also carrying $1,655.29 in cash. (Tr. 34). Officer Kling filled out a standard ACPD form regarding the items he found in searching the motorcycle.[4] (*See* Ex. A).

Officer Kling initially placed Fitch under arrest for fleeing arrest on his motorcycle. (Tr. 34). Officer Kling also arrested Fitch for possession of methamphetamine, possession of marijuana, and possession of paraphernalia. (Tr. 34-35).

### III.  DISCUSSION

### A.  Legal Standard

"The Fourth Amendment protects citizens against unreasonable searches and seizures. Ordinarily, warrantless searches are presumptively unreasonable." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013); *see* U.S. Const. amend. IV; *United States v. Whitaker*, 546 F.3d 902, 906 (7th Cir. 2008) ("The Fourth Amendment to the Constitution of the United States prevents the Government from conducting unreasonable searches and seizures." (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002))). Three exceptions to the warrant requirement are at issue in this case.

The first exception that may be present permits the warrantless search of a vehicle

---

[4] At the hearing, Fitch's counsel questioned Officer Kling as to why some items were not listed in impound/search form. (Tr. 46-47, 49). Counsel for Fitch also questioned Officer Kling regarding the dates listed on the form, and why Officer Kling conducted a search prior to the vehicle being impounded. (Tr. 44-45, 48-50, 53-54). These arguments lack merit, and Fitch does not raise them in his brief, and therefore, they are deemed waived.

incident to a lawful arrest. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). Under this exception, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. (alteration in original) (citation and internal quotation marks omitted); *see Arizona v. Gant*, 556 U.S. 332, 346 (2009) ("Under our view, *Belton* and *Thornton* permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").

The second relevant exception is the automobile exception, which "is justified by a vehicle's 'ready mobility' which makes 'immediate intrusion' necessary to prevent the destruction of evidence." *United States v. Zahursky*, 580 F.3d 515, 522 (7th Cir. 2009) (citing *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004)). The automobile exception is also supported by "the individual's lesser expectation of privacy in a vehicle." *Id*. (citation omitted).

Under this exception, "if there is probable cause to believe that a vehicle contains evidence of criminal activity, police may search any area in which the evidence might be found." *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010) (citation omitted). Officers are permitted to search "for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Id*. (citation omitted). However, "[t]he scope of the search [cannot be] greater than a magistrate could have authorized by issuing a warrant based on the probable cause that justified the search." *United States v. Ross*, 456 U.S. 798, 818 (1982); *see United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015). "Authorities have probable cause if, based on the totality of circumstances, there exists a fair probability of finding the items." *United States v. Calvo-Saucedo*, 409 F. App'x 21, 25 (7th Cir. 2011) (citing *Illinois v.*

6

*Gates*, 462 U.S. 213, 238 (1983); *Zahursky*, 580 F.3d at 521).

The last exception at issue is an inventory search. "Inventory searches are a well-recognized exception to the Fourth Amendment's warrant requirements." *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991) (collecting cases). "[I]nventory searches 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of loss, stolen, or vandalized property, and to guard the police from danger.'" *Id*. (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)); *see United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010) ("The latter, the inventory-search exception, states that a warrantless search of a vehicle before impoundment is lawful if conducted in conformity with standard police procedures aimed at protecting the owner's property." (citations omitted)). "An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) (citing *United States v. Jackson*, 189 F.3d 508-09 (7th Cir. 1999)).

**B. Analysis**

1. <u>The Search Incident to a Lawful Arrest Exception</u>

The Government argues that the search of Fitch's motorcycle was justified as a search incident to a lawful arrest under *Gant*. The Supreme Court has stated:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

7

*Gant*, 556 U.S. at 351.  The Government urges that *Gant* allows an officer to conduct a search of a vehicle incident to arrest for evidence unrelated to the crime of arrest even when the suspect is handcuffed and in a police vehicle.  However, the Government fails to cite an analogous case where a court found such a search lawful under the incident to an arrest exception.[5]

To the contrary, the Seventh Circuit has held that these types of searches are not valid as a search incident to arrest.  *See Edwards*, 769 F.3d at 514 ("Because Edwards was handcuffed and sitting in the back of the police squad [car] when Sergeant Pufall searched the Mitsubishi, only the second justification for a search incident to arrest is available here."); *United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010) ("While *Gant* held that this exception excuses the need for a warrant only when the arrestee actually has potential access to the vehicle, it also emphasized, as we recently observed in *United States v. Stotler*, 591 F.3d 935, 940-41 (7th Cir.2010), that the Court did not invalidate other exceptions to the warrant requirement for vehicle searches.").  Therefore, I CONCLUDE that the search of Fitch's motorcycle cannot be justified as a search incident to a lawful arrest.[6]

### 2. The Automobile Exception

Next the Government argues that the search was justified under the automobile exception.  Under this exception, officers were permitted to search a vehicle and any containers therein, if they have probable cause to believe that they would find contraband, even if the evidence is not relevant to the offense of arrest.  *See Nicksion*, 628 F.3d at 377.  "Probable cause

---

[5] The Government cites *United States v. Vinton*, 594 F.3d 14 (D.C. Cir. 2010) in support of its argument that a search of Fitch's motorcycle incident to a lawful arrest was justified.  However, *Vinton* is distinguishable because in that case, an officer saw a weapon in plain view, which justified searching the vehicle after the driver was in handcuffs and removed from the car.  *Id*. at 20 ("[T]he presence of one weapon may justifiably arouse concern that there may be more in the vicinity." (alteration in original) (citation and internal quotation marks omitted)).

[6] The Government does not argue that the crime of arrest, for purposes of a search incident to an arrest, was possession of methamphetamine pursuant to the DeKalb County warrant.  In fact, the officers appear to have arrested Fitch before learning of the warrant for his arrest in DeKalb County.  (*See* Ex. 1 at 10:25-11:00).

8

exists when based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *Charles*, 801 F.3d at 860 (citation and internal quotation marks omitted). "It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) (citing *United States v. Breit*, 429 F.3d 725, 728 (7th Cir. 2005)). "In determining whether suspicious circumstances rise to the level of probable cause, officers are entitled to draw reasonable inferences based on their training and experience." *Id.* (citations omitted).

      Here, Officer Kling had probable cause to search Fitch's motorcycle for crimes unrelated to the offense of arrest. Officer Kling ran Fitch's information and learned that Fitch had an active warrant in DeKalb County for possession of methamphetamine, and that he had been previously convicted for possession of methamphetamine. Officer Kling was also familiar with Fitch as somebody who dealt methamphetamine in the area. Moreover, Fitch fled from Officer Kling, which suggests wrongdoing. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *Reed*, 443 F.3d at 603 (giving evasive and contradictory explanations for making a trip contributed to a finding of probable cause). Based on these facts, it was a fair inference that Fitch's motorcycle could contain contraband, including paraphernalia, scales, methamphetamine, or other drugs. *See, e.g.*, *Charles*, 801 F.3d at 860-61 (finding that evidence that the suspect had been recently carrying a handgun provided probable cause for an automobile search); *Zahursky*, 580 F.3d at 521-22 (finding that officers could reasonably infer that the suspect's car would contain evidence of criminal activity based on monitored discussions).

Fitch does not dispute this evidence; rather, he appears to argue that the search of his motorcycle was unlawful because Officer Kling violated ACPD policy by pursuing Fitch in his police truck. This argument fails because "the violation of police regulations or even state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chi.*, 472 F.3d 444, 454 (7th Cir. 2006) (citation omitted); *see Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Therefore, I CONCLUDE that the officers were justified in searching Fitch's motorcycle pursuant to the automobile exception.

### 3. The Inventory Search Exception

Third, the Government argues that the search of Fitch's motorcycle was a permissible inventory search. The inventory search exception applies when: "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Cartwright*, 630 F.3d at 614 (citation omitted). Additionally, the search must be reasonable under the Fourth Amendment. *See id.* (citation omitted); *Jackson*, 189 F.3d at 508.

Fitch does not take issue with the first element of the analysis. Instead, Fitch argues that the second element of the analysis is not satisfied because Officer Kling did not list everything he found in the Impound Report, and because there were no exigent circumstances necessitating an inventory search before the motorcycle was impounded. Therefore, Fitch argues, the officers exhibited bad faith in conducting the search, in violation of the Fourth Amendment. (DE 41 ¶¶ 18-21 (citing *Bertine*, 479 U.S. 367)).

Fitch is correct that while Officer Kling found numerous items in the motorcycle (*e.g.*,

paraphernalia, methamphetamine, scales), his Impound Report does not record any items found other than "DRUGS." (Ex. A). Fitch is also correct that the ACPD policy requires officers to identify in an Impound Report "[a]ny items of value that are located within the vehicle . . . ." (Ex. 3). However, Fitch fails to appreciate that officers may exercise discretion in performing an inventory search, and to a limited extent, may deviate from their normal policy. *See United States v. Lomeli*, 76 F.3d 146, 149 (7th Cir. 1996) ("Thus we may find that the general order sufficiently regulated the search as long as the officer acting thereunder, and perhaps deviating therefrom, exercised discretion relating to the purposes of the inventory search."). Indeed, the Supreme Court does not "insist that [inventory searches] be conducted in a totally mechanical 'all or nothing' fashion. *Fla. v. Wells*, 495 U.S. 1, 4 (1990); *see Lomeli*, 76 F.3d at 148-49 (citation omitted).

Accordingly, Officer Kling's failure to mechanically adhere to ACPD policy in recording what he found in the inventory search does not invalidate the search itself. Moreover, Officer Kling testified that he did not report the baggies and scales because he did not consider them valuable (Tr. 47), which is consistent with ACPD policy (*see* Ex. 3). In any event, Fitch has not asserted how Officer Kling's failure to provide a comprehensive itemized list of what was found during the inventory search violated his Fourth Amendment rights. *See, e.g.*, *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) ("Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment." (citation omitted)).

Equally unpersuasive is Fitch's argument that the search of the motorcycle before it was impounded was not justified absent exigent circumstances. As the Government points out, there is nothing in the ACPD policy regarding the impounding of vehicles that requires an inventory

11

search to be conducted *after* the vehicle is impounded. In fact, Officer Kling testified that inventory searches of vehicles prior to being impounded are standard ACPD policy. (Tr. 53). Furthermore, Fitch has not cited any authority indicating that the Fourth Amendment prohibits inventory searches prior to impounding a vehicle. To the extent that Fitch relies on *Bertine*, nothing in the record indicates that the officers administered ACPD procedures in bad faith by conducting an inventory search as to violate the Fourth Amendment's requirement for reasonableness. *See Bertine*, 479 U.S. at 742 ("We conclude that here, as in *Lafayette*, reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure."). Therefore, I CONCLUDE that the officers lawfully searched Fitch's motorcycle pursuant to the inventory search exception.

### 4. No Grounds For Relief

Finally, even if Fitch was correct that the officers violated his Fourth Amendment rights, which he is not, he is not entitled to any relief because he admits that "[c]ertainly, the artifacts in question which led to the arrest of Mr. Fitch would have been found after the motorcycle was taken into custody and an inventory occurred . . . ." (DE 41 ¶ 25). "Under the inevitable discovery doctrine, if the government can establish that the evidence at issue, even though unlawfully obtained, would have inevitably been discovered through lawful means, then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be admitted." *Cartwright*, 630 F.3d at 613 (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). Therefore I CONCLUDE that Fitch has not demonstrated a basis for suppressing any of the evidence in this case.

## IV. CONCLUSION

For the above reasons, I CONCLUDE that Fitch's Fourth Amendment rights were not violated, and that even if they had been, he has not shown grounds for suppressing the evidence in this case. I therefore RECOMMEND that Fitch's motion to suppress the evidence in this case (DE 32) be DENIED.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. Fed. R. Crim. P. 59(b)(2). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

Dated this 24th day of May 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge